Matter of Stewart v Justice Ctr. for The Protection of People With Special Needs (2019 NY Slip Op 04804)





Matter of Stewart v Justice Ctr. for The Protection of People With Special Needs


2019 NY Slip Op 04804


Decided on June 13, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 13, 2019

527413

[*1]In the Matter of JAMES STEWART, Petitioner,
v
JUSTICE CENTER FOR THE PROTECTION OF PEOPLE WITH SPECIAL NEEDS, Respondent.

Calendar Date: April 23, 2019

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Pritzker, JJ.


Lippes Mathias Wexler Friedman LLP, Albany (Lawrence H. Schaefer of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kathleen M. Treasure of counsel), for respondent.



MEMORANDUM AND JUDGMENT
Egan Jr., J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's request to amend and seal a report of abuse.
Petitioner is employed as a security hospital treatment assistant (hereinafter SHTA) at Kirby Forensic Psychiatric Center, a secure facility operated by the Office of Mental Health. In July 2015, respondent received a report alleging that petitioner had used excessive force and engaged in deliberate inappropriate use of restraints and physical abuse against a service recipient. The report alleged that, while attempting to break up a fight between the service recipient and another patient — during which the service recipient brandished a plastic knife — petitioner made inappropriate physical contact with the service recipient when he grabbed him by the collar, dropped him to the floor, dragged him out of the dining room and struck him in the left eye. An investigator for respondent thereafter conducted an investigation and found the report of deliberate inappropriate use of restraints and physical abuse to be substantiated as a category two offense pursuant to Social Services Law § 493 (4) (b). Petitioner's subsequent request to amend the report to unsubstantiated was denied by respondent's administrative appeals unit, and the matter was referred for an administrative hearing.
Following a hearing, an Administrative Law Judge (hereinafter ALJ) denied petitioner's request to amend and seal the report, finding that respondent had established, by a preponderance of the evidence, that petitioner engaged in the deliberate inappropriate use of restraints (see Social Services Law § 488 [1] [d]) and physical abuse (see Social Services Law § 488 [1] [a]) by dragging the service recipient out of the dining room by the back of the shirt. However, the ALJ determined that the report's allegations with respect to petitioner striking the service recipient in the left eye and separating the service recipient from the other patient during the subject fight [*2]were unsubstantiated. As a result, the substantiated report was amended to reduce the category two determination to a category three offense. In a subsequent decision rendered by respondent's Director of the Administrative Hearings Unit, respondent adopted the ALJ's findings of fact and conclusions of law and issued a final determination denying petitioner's request to amend and seal the category three finding of deliberate inappropriate use of restraints and physical abuse. Petitioner then commenced this proceeding pursuant to CPLR article 78 to annul respondent's final determination as unsupported by substantial evidence, which Supreme Court transferred to this Court.
A final administrative determination rendered following a hearing will be confirmed by this Court so long as there is substantial evidence in the record to support it (see CPLR 7803 [4]; Matter of Watson v New York State Justice Ctr. for the Protection of People with Special Needs, 152 AD3d 1025, 1026 [2017]; Matter of Williams v New York State Justice Ctr. for the Protection of People with Special Needs, 151 AD3d 1355, 1357 [2017]). Notably, "[i]f substantial evidence is present in the record, this Court cannot substitute its own judgment for that of [respondent], even if a contrary result is viable" (Matter of United Helpers Care, Inc. v Molik, 164 AD3d 1029, 1032 [2018] [internal quotation marks and citations omitted]; see Matter of Watson v New York State Justice Ctr. for the Protection of People with Special Needs, 152 AD3d at 1026-1027; Matter of Cauthen v New York State Justice Ctr. for the Protection of People with Special Needs, 151 AD3d at 1439).
As relevant here, the "deliberate inappropriate use of restraints" is defined as "the use of a restraint when the technique that is used, the amount of force that is used or the situation in which the restraint is used is deliberately inconsistent with a service recipient's individual treatment plan or behavioral intervention plan, generally accepted treatment practices and/or applicable federal or state laws, regulations or policies" (Social Services Law § 488 [1] [d]). "Physical abuse" is defined as "conduct by a custodian intentionally or recklessly causing, by physical contact, physical injury or serious or protracted impairment of the physical, mental or emotional condition of a service recipient or causing the likelihood of such injury or impairment. Such conduct may include but shall not be limited to . . . dragging
. . . or the use of corporal punishment" (Social Services Law § 488 [1] [a]). Neither deliberate inappropriate use of restraints nor physical abuse, however, will be found where the subject restraint or physical contact constituted a reasonable emergency intervention necessary to protect a service recipient (see Social Services Law § 488 [1] [d]) or any other person (see Social Services Law § 488 [1] [a]).
In support of the allegations against petitioner, respondent submitted, among other things, the report of respondent's investigator and transcripts of the investigator's interviews with petitioner, the service recipient and other employees that were present during the incident. Testifying at the hearing on respondent's behalf was its investigator, as well as a staff development specialist from the Office of Mental Health who specializes in and provides training for the Preventing and Managing Crisis Situations curriculum. The evidence at the hearing established that, on the afternoon of July 4, 2015, petitioner was working as an SHTA and was stationed in a dining room along with two other SHTAs when a fist fight broke out between the service recipient and another patient. The service recipient and the other patient did not subsequently heed the SHTAs verbal commands to stop fighting and, after petitioner observed the service recipient press a plastic knife against the other patient's face, he physically intervened in an attempt to separate the service recipient from the other patient by pulling on the back of the service recipient's shirt and forcing him to the floor. The allegations substantiated by the ALJ specifically involved the manner in which petitioner thereafter removed the service recipient from the dining room. To that end, it is undisputed that, as the service recipient was brought to the ground, he dropped the plastic knife that he had used during the fight. Although the service recipient remained agitated and continued to be verbally aggressive while on the floor, there was no evidence presented indicating that he made any attempts to subsequently reach for the knife or was otherwise physically aggressive in a manner that created an imminent danger to other [*3]individuals so as to require further physical intervention at that time [FN1]. Petitioner testified, however, that he nevertheless made an assessment that the service recipient needed to be removed from the dining room and admitted that he forcibly "grabbed him [by] the back of his shirt" with both of his hands and dragged him six to eight feet out of the dining room and into the adjoining hallway, an account that was corroborated by the other witnesses to the incident.
Pursuant to Social Services Law § 488 (1) (a), "dragging" is specifically enumerated as conduct that constitutes physical abuse. The staff development specialist who testified on respondent's behalf indicated — and petitioner acknowledged — that dragging, pulling or otherwise physically engaging with a service recipient who is on the floor is not a proper technique under the Preventing and Managing Crisis Situations curriculum and constitutes an inappropriate use of restraint (see Social Services Law § 488 [1] [d]), and that the proper protocol would have been for petitioner to reassess the situation once the service recipient had been brought to the floor [FN2]. Contrary to petitioner's contention, there is ample evidence in the record demonstrating that, once the service recipient had been forced to the floor and dropped the knife, emergency intervention was no longer required to protect the safety of others. Accordingly, on the record before us, we find that there is substantial evidence supporting respondent's final determination that petitioner engaged in conduct constituting a category three offense and, therefore, respondent's determination is confirmed (see Matter of Kelly v New York State Justice Ctr. for the Protection of People with Special Needs, 161 AD3d 1344, 1346 [2018]; Matter of Roberts v New York State Justice Ctr. for the Protection of People with Special Needs, 152 AD3d 1021, 1025 [2017]).
Garry, P.J., Clark, Mulvey and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: In fact, one of the other SHTAs who was in the dining room during the incident reported to the investigator that, after the service recipient dropped the knife on the floor, she thereafter retrieved it.

Footnote 2: Petitioner further testified that, once the service recipient was on the ground, he "should have [taken his] time to respond, maybe [he] should have waited."